**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005,<br><br>               Plaintiff,<br><br>     v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street NE<br>Washington, DC 20463,<br><br>             Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

More than 850 days ago, on October 16, 2018, Plaintiff Campaign Legal Center ("CLC") filed an administrative complaint with the Federal Election Commission ("FEC" or "Commission") alleging that Heritage Action for America ("Heritage Action") violated the Federal Election Campaign Act ("FECA") by failing to disclose who paid for its election advertising during the 2018 election cycle. In September of 2018, Heritage Action, a 501(c)(4) corporation, spent at least $374,177 on ads supporting candidates running for United States House of Representatives seats in 2018. Heritage Action's press communications and FEC filings confirm that it solicited, received, and spent contributions for the purpose of furthering its ads and was therefore required to disclose those contributions. But Heritage Action did not do so.

To Plaintiff's knowledge, the FEC has taken no action on the administrative complaint since it was filed in October 2018. Plaintiff requests that this Court declare that the FEC's failure to act is contrary to law, and order the FEC to conform within thirty days by acting on Plaintiff's

1

administrative complaint. *See* 52 U.S.C. § 30109(a)(8)(A). If the FEC does not conform within thirty days, FECA authorizes Plaintiff to commence a civil action against Heritage Action to enforce federal campaign finance laws. *See id.* § 30109(a)(8)(C).

\* \* \*

1.      This is an action under FECA, 52 U.S.C. § 30109(a)(8)(A). Plaintiff seeks injunctive and declaratory relief to compel Defendant FEC to act on Plaintiff's administrative complaint regarding Heritage Action's failure to disclose contributions it received to support its election advertising during the 2018 election cycle, in violation of 52 U.S.C. § 30104.

2.      On August 8, 2018, Heritage Action announced that it planned to solicit contributions and spend $2.5 million on "independent expenditures"—advertising expressly advocating the election or defeat of federal candidates—in twelve specified congressional races during the November 2018 general election. According to its FEC filings, in mid-September 2018, Heritage Action spent $374,177 on independent expenditures on these races in the form of mailers and digital advertising. Despite having solicited and received contributions to support its independent expenditure spending, Heritage Action failed to report to the FEC who contributed for this purpose. On October 16, 2018, CLC and Margaret Christ (an individual) filed an administrative complaint with the FEC showing that Heritage Action violated FECA by failing to disclose its contributors.[1]

3.      FECA provides administrative complainants with a right of action against the FEC if the FEC fails to act on a complaint within 120 days, at which point, "the court may declare that . . . the failure to act is contrary to law and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such

---

[1]      *See* Ex. 1 (Admin. Compl.).

complainant, a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C). More than 850 days have passed since Plaintiff filed the administrative complaint against Heritage Action.

## JURISDICTION AND VENUE

4.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## PARTIES

5.      CLC is a nonpartisan, nonprofit 501(c)(3) organization headquartered in Washington, D.C., whose mission is to protect and strengthen the U.S. democratic process through research, education, litigation, and other legal advocacy. CLC participates in judicial and administrative matters throughout the nation regarding campaign finance, voting rights, redistricting, and government ethics issues.

6.      CLC's work on campaign finance-related issues—including public education, litigation, administrative advocacy and enforcement, and legislative reform efforts—depends on accurate and complete campaign finance reporting as required by statute. This work is obstructed where, as here, campaign finance information subject to mandatory disclosure under FECA is not available. CLC has a cognizable interest in the underlying information that an entity making independent expenditures has not accurately or fully disclosed to the FEC. Without this information, CLC's campaign finance advocacy, public education work, and legislative reform efforts are inhibited. The withholding of information to which CLC is legally entitled also forces CLC to divert resources from other projects furthering CLC's mission to obtain the information.

7.    Moreover, CLC also has a right to receive information upon the FEC's adjudication of its administrative complaint, including responses received by the FEC from the respondents, legal and factual analysis by the FEC staff, and other investigatory materials and records. *See* 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. § 111.20(a); 81 Fed. Reg. 50702. This information informs CLC's campaign finance programs, including its public education efforts, its regulatory and enforcement practice, and its reform efforts. By unlawfully delaying resolution of CLC's administrative complaint, the FEC has denied CLC access to this information to which it is entitled.

8.    Defendant Federal Election Commission is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## BACKGROUND

### *Governing Law*

9.    Independent expenditures are expenditures that expressly advocate the election or defeat of a clearly identified federal candidate and are not coordinated with a candidate or political party. 52 U.S.C. § 30101(17); 11 C.F.R. § 100.16(a). A "contribution" is defined as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i).

10.    Courts have repeatedly recognized the importance of campaign finance disclosure to informing the electorate. *See*, *e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *see also Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 17 (D.C. Cir. 2014) (observing that the "[Supreme] Court has endorsed disclosure as 'a particularly effective means of arming the voting public with information'" (quoting *McCutcheon v. FEC*, 572 U.S. 185, 224 (2014)).

4

11.     FECA requires that a person other than a political committee that makes independent expenditures in excess of $250 in a calendar year must file a report with the Commission disclosing, among other things, the identification of each "person (other than a political committee) who makes a contribution to the reporting [entity] during the reporting period . . . in excess of $200 within the calendar year," 52 U.S.C. § 30104(b)(3)(A) (cross-referenced in *id*. § 30104(c)(1)), and "the identification of each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering an independent expenditure," *id.* § 30104(c)(2)(C).

12.     Previous Commission regulations interpreted FECA to require disclosure of each person who made a contribution in excess of $200 "which contribution was made for the purpose of furthering the reported independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi). This meant that under this now vacated regulation, a reporting entity only had to disclose donors who specifically earmarked their contributions for the particular expenditure being reported to the FEC. On August 3, 2018, however, this Court ruled that the regulation was invalid and contrary to the statute it purported to implement. *Citizens for Responsibility and Ethics in Washington ("CREW") v. FEC*, 316 F. Supp. 3d 349, 423 (D.D.C. 2018). The Court ruled that the Commission's regulation "impermissibly narrow[ed] the mandated disclosure in 52 U.S.C. § 30104(c)(2)(C), which requires the identification of such donors contributing for the purpose of furthering the not-political committee's own express advocacy for or against the election of a federal candidate, even when the donor has not expressly directed that the funds be used in the precise manner reported." *Id.* at 423. The Court found that FECA's "[u]se of the indefinite article 'an' before 'independent expenditure' indicates a broader coverage than a particular, specified independent expenditure and instead means that disclosure must be made as to each non-trivial donor contributing to fund 'an

independent expenditure' to a candidate, without regard to the actual reported form of the express advocacy funded by the expenditure." *Id.* at 390–91.

13.     The Court further ruled that the regulation "blatantly undercut[ ] the congressional goal of fully disclosing the sources of money flowing into federal political campaigns, and thereby suppresse[d] the benefits intended to accrue from disclosure, including informing the electorate, deterring corruption, and enforcing bans on foreign contributions being used to buy access and influence to American political officials." *Id*. at 423. As such, the Court held that FECA requires an entity reporting independent expenditures to disclose contributors who give for the purpose of supporting the entity's independent expenditures generally, and not just contributors who earmark their contributions for a specific expenditure. *Id.* at 377.

14.     The *CREW v. FEC* Court's order vacating 11 C.F.R. § 109.10(e)(1)(vi) took effect on September 18, 2018.[2]

15.     On October 4, 2018, the FEC issued guidance stating that, in accordance with *CREW v. FEC*, the Commission would "enforce the statute for independent expenditures made on or after Sept. 18, 2018," including the contributor disclosure requirements for "*all* contributions received by [the] reporting non-political committee."[3]

16.     Relevant here, "[f]or contributions received between Aug. 4, 2018 (the date after the district court's opinion [in *CREW v. FEC*]) and Sept. 30, 2018 (the end of the reporting period)," the FEC stated that reporting persons had to disclose "the information required by 52

---

[2]     *See* Ex. 2 (Press Release, FEC, *U.S. Supreme Court vacates stay in CREW v. FEC (16-259)* (Sept. 19, 2018)); *see also Crossroads Grassroots Policy Strategies v. CREW,* No. 18A274, 2018 WL 4441781 (U.S. Sept. 18, 2018) (lifting stay).

[3]     *See* Ex. 3 at 3 (Press Release, FEC, *FEC provides guidance following U.S. District Court decision in CREW v. FEC, 316 F. Supp. 3d 349 (D.D.C. 2018)* (Oct. 4, 2018)) (emphasis in original).

U.S.C. § 30104(c)(1) and (c)(2)(C)," which includes (1) "the identification of each person (other than a political committee) whose contribution or contributions to the reporting person had an aggregate amount or value in excess of $200 within calendar year 2018, together with the date and amount of any such contribution(s);" and (2) "the identification of each of these persons whose contribution(s) in excess of $200 to the reporting person was made for the purpose of furthering any independent expenditure."[4]

### *Facts*

17.     Heritage Action is a corporation exempt from income tax under Section 501(c)(4) of the Internal Revenue Code.[5] It reports independent expenditures to the FEC under ID: C90013525.

18.     On August 8, 2018, Heritage Action issued a press release declaring its intention "to spend $2.5 million and back 12 candidates this November."[6] The release included "the complete list of districts Heritage Action will be targeting" and identified twelve U.S. House candidates by name and congressional district.[7]

19.     That same day, *McClatchy* also reported that "Heritage Action for America, the political arm of Washington's Heritage Foundation, has selected a dozen races for investment," and that "[t]he organization plans to spend at least $2.5 million, with the minimum investment in

---

4       *Id.*
5       *See* Ex. 4 (Heritage Action for America, Return of Organization Exempt from Income Tax, IRS Form 990 (filed June 29, 2017)).
6       *See* Ex. 5 (Press Release, Heritage Action for America, *Heritage Action to spend $2.5 million and back 12 candidates this November* (Aug. 8, 2018)).
7       *Id.* The "targeted candidates" were IA-01 - Rod Blum; KY-06 - Andy Barr; MI-08 - Mike Bishop; MO-02 - Ann Wagner; NC-09 - Mark Harris; NC-13 - Ted Budd; NJ-11 - Jay Webber; NM-02 - Yvette Herrell; OH-01 - Steve Chabot; PA-10 - Scott Perry; PA-17 - Keith Rothfus; VA-07 - Dave Brat. *Id.*

each district ranging between $200,000 and $400,000, Heritage Action officials told *McClatchy*, adding that they hope to be able to spend more."[8]

20.    The *McClatchy* article further reported that "[t]o aid their chosen candidates, [Heritage Action] is planning a three-pronged campaign in the 12 selected districts, set to launch the second week of September, after Labor Day. It will include three to five pieces of direct mail, an online advertising effort, and TV ad buys either on Fox News or on broadcast television[.]"[9]

21.    *McClatchy* interviewed Heritage Action Executive Director Tim Chapman for the article and summarized his comments that Heritage Action's "involvement should be considered more significant than the dollar figure alone suggests, because their name brand resonates with the many conservative activists Heritage has cultivated over the years."[10]

22.    Heritage Action Executive Director Tim Chapman also told *McClatchy* for the August 8, 2018 article*:*

> "What we're telling donors is, every dollar we raise over our budget we can effectively pour more into these races," he said, adding, "we feel really strongly that the dollars we spend, we'll punch above our weight, because we have a brand name."
>
> He added that if this new effort is successful, he would expect the organization to ramp up their political involvement headed into the next campaign cycle.
>
> "If we are able to make a difference and this is a good, positive experience for us this fall, I think we end up doing more in the 2020 cycle," he said. "We'd have to raise significantly more to get involved in the Senate and presidential, but I'm not ruling it out."[11]

---

[8]    Ex. 6 at 1 (Katie Glueck, *Conservative DC Group Throws Money to McGrath's Opponent, 11 Other Republicans*, McClatchy (Aug. 8, 2018))
[9]    *Id.* at 2.
[10]    *Id.* at 3.
[11]    *Id.*

23.     On September 19, 2018, Heritage Action filed a report with the Commission disclosing that it had spent $374,177 on independent expenditures in the form of mailers and digital advertising supporting the same twelve candidates named in the August 8, 2018 Heritage Action press release and the *McClatchy* news article.[12]

24.     The September 19, 2018 report revealed that Heritage Action disseminated the independent expenditure communications between September 17 and 19, 2018.[13]

25.     The September 19, 2018 report included a note stating: "Please note that the independent expenditures disclosed on this report were paid for from general treasury funds and no contributions were made for the purpose of furthering *these* expenditures."[14]

26.     On October 12, 2018, Heritage Action filed its quarterly report disclosing the same $374,177 on independent expenditures supporting the twelve congressional candidates.[15]

27.     The October 12, 2018 report disclosed that Heritage Action disseminated $233,585 of the reported independent expenditures on September 17, 2018, and $140,592 on September 19, 2018.[16]

28.     The October 12, 2018 report also included a note stating: "Please note that the independent expenditures disclosed on this report were paid for from general treasury funds and, to the best of my knowledge, information, and belief at the time of filing, no reportable contributions were made for the purpose of furthering *these* expenditures."[17]

---

[12]     Ex. 7 at 1, 3–22 (Heritage Action for America, Report of Independent Expenditures, FEC Form 5 (filed Sept. 19, 2018)).
[13]     *Id*. at 3–22.
[14]     *Id.* at 2 (emphasis added).
[15]     Ex. 8 at 1, 3–22 (Heritage Action for America, October 15 Quarterly Report of Independent Expenditures, FEC Form 5 (filed Oct. 12, 2018)).
[16]     *Id.* at 3–22.
[17]     *Id.* at 2 (emphasis added).

29.     FECA requires that Heritage Action disclose the identity of contributors who gave for the purpose of furthering Heritage Action's independent expenditures generally, regardless of whether the contributions were earmarked for the purpose of furthering the specific expenditures reported. *See* 52 U.S.C. §§ 30104(c)(1), (c)(2)(C).[18]

30.     Despite FECA's disclosure requirements and the FEC's guidance following the Court's decision in *CREW v. FEC*, Heritage Action's October 2018 FEC Report failed to disclose its contributors.

## ADMINISTRATIVE PROCEEDINGS

31.     On October 16, 2018, CLC and an individual, Margaret Christ, filed an administrative complaint against Heritage Action with the FEC, seeking enforcement of FECA's reporting requirements, 52 U.S.C. § 30104.[19]

32.     On October 22, 2018, the FEC sent CLC and Christ a letter acknowledging receipt of the complaint and designating it Matter Under Review 7516.[20]

33.     FECA establishes a five-year statute of limitations on enforcement actions, which is rapidly approaching for the violations alleged in the complaint.

34.     Nonetheless, the Commission has announced no action on the complaint, which has been pending for over 850 days.

## CAUSE OF ACTION

### FECA, 52 U.S.C. § 30109(a)(8)(A)

35.     Plaintiff repeats and realleges paragraphs 1–34.

---

[18]     *See also* Ex. 3.
[19]     *See* Ex. 1.
[20]     *See* Ex. 9 (FEC Admin. Compl. Acknowledgment Letter (October 22, 2018)).

10

36.     Defendant's failure to act on Plaintiff's administrative complaint against Heritage Action is contrary to law. *See* 52 U.S.C. § 30109(a)(8)(A).

**REQUESTED RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(1)     Declare that the FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Order the FEC to conform with this declaration within thirty days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)     Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4)     Grant such other relief the Court may deem just and proper.


February 16, 2021                                          Respectfully submitted,

                                                            /s/ Mark P. Gaber
                                                            Adav Noti (DC Bar No. 490714)
                                                            Mark P. Gaber (DC Bar No. 988077)
                                                            Molly E. Danahy (DC Bar No. 1643411)
                                                            CAMPAIGN LEGAL CENTER
                                                            1101 14th Street NW, Ste. 400
                                                            Washington, DC 20005
                                                            (202) 736-2200
                                                            anoti@campaignlegal.org
                                                            mgaber@campaignlegal.org
                                                            mdanahy@campaignlegal.org