# EXHIBIT 1

# BEFORE THE FEDERAL ELECTION COMMISSION

RECEIVED
MAIL CENTER
2019 OCT 16 PM 12: 54

CAMPAIGN LEGAL CENTER
1411 K Street NW, Suite 1400
Washington, DC 20005
(202) 736-2200

MARGARET CHRIST
1411 K Street NW, Suite 1400
Washington, DC 20005
(202) 736-2200

     v.                MUR No. _____

HERITAGE ACTION FOR AMERICA
214 Massachusetts Ave NE, Suite 400
Washington, DC 20002

## COMPLAINT

1. This complaint is filed pursuant to 52 U.S.C. § 30109(a)(1) and is based on information and belief that Heritage Action for America has violated the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101, *et seq.*, by failing to report the identity of contributors who contributed for the purpose of furthering its independent expenditures.

2. "If the Commission, upon receiving a complaint . . . has reason to believe that a person has committed, or is about to commit, a violation of [FECA] . . . [t]he Commission *shall* make an investigation of such alleged violation . . . ." 52 U.S.C. § 30109(a)(2) (emphasis added); *see also* 11 C.F.R. § 111.4(a).

3. Campaign Legal Center ("CLC") is a nonpartisan, nonprofit 501(c)(3) organization whose mission is to protect and strengthen the U.S. democratic process through litigation and other legal advocacy. CLC participates in judicial and administrative matters throughout the nation regarding campaign finance, voting rights, redistricting, and government ethics issues.

1

## FACTS

4. Heritage Action for America ("Heritage Action") is a social welfare organization exempt from income tax under Section 501(c)(4) of the Internal Revenue Code.[1] It reports independent expenditures with the Commission under ID: C90013525.

5. On August 8, 2018, Heritage Action issued a press release declaring its intention "to spend $2.5 million and back 12 candidates this November."[2] The release included "the complete list of districts Heritage Action will be targeting" and identified 12 U.S. House candidates by name and district.[3]

6. That same day, August 8, 2018, *McClatchy* similarly reported that "Heritage Action for America, the political arm of Washington's Heritage Foundation, has selected a dozen races for investment," and that "the organization plans to spend at least $2.5 million, with the minimum investment in each district ranging between $200,000 and $400,000, Heritage Action officials told *McClatchy*, adding that they hope to be able to spend more."[4] The *McClatchy* article identified the same 12 candidates named in Heritage Action's press release, and further reported that:

> To aid their chosen candidates, the organization is planning a three-pronged campaign in the 12 selected districts, set to launch the second week of September, after Labor Day. It will include three to five pieces of direct mail, an online advertising effort, and TV ad buys either on Fox News or on broadcast television, all pushing pro-tax reform

---

[1] *See* Heritage Action for America, Return of Organization Exempt from Income Tax, IRS Form 990, at 1 (filed June 29, 2017), https://projects.propublica.org/nonprofits/organizations/272244700/201711809349300126/IRS990.

[2] Press Release, Heritage Action for America, Heritage Action to spend $2.5 million and back 12 candidates this November (Aug. 8, 2018), https://heritageaction.com/press/heritage-action-to-spend-2-5-million-and-back-12-candidates-this-november.

[3] *Id.* The "targeted candidates" were IA-01 - Rod Blum; KY-06 - Andy Barr; MI-08 - Mike Bishop; MO-02 - Ann Wagner; NC-09 - Mark Harris; NC-13 - Ted Budd; NJ-11 - Jay Webber; NM-02 - Yvette Herrell; OH-01 - Steve Chabot; PA-10 - Scott Perry; PA-17 - Keith Rothfus; VA-07 - Dave Brat. *Id.*

[4] Katie Glueck, *Conservative DC Group Throws Money to McGrath's Opponent, 11 Other Republicans*, MCCLATCHY (Aug. 8, 2018), https://www.mcclatchydc.com/news/politics-government/article216227855.html.

2

       messaging and aiming to offer specifics on how individuals and families benefit from the tax legislation passed by the GOP Congress.[5]

7. Also in the August 8, 2018 news article, Heritage Action Executive Director Tim Chapman told *McClatchy*:

> that their involvement should be considered more significant than the dollar figure alone suggests, because their name brand resonates with the many conservative activists Heritage has cultivated over the years.
>
> "What we're telling donors is, every dollar we raise over our budget we can effectively pour more into these races," he said, adding, "we feel really strongly that the dollars we spend, we'll punch above our weight, because we have a brand name."
>
> He added that if this new effort is successful, he would expect the organization to ramp up their political involvement headed into the next campaign cycle.
>
> "If we are able to make a difference and this is a good, positive experience for us this fall, I think we end up doing more in the 2020 cycle," he said. "We'd have to raise significantly more to get involved in the Senate and presidential, but I'm not ruling it out."[6]

8. On September 19, 2018, Heritage Action filed a 48-Hour report with the Commission disclosing $374,177 in independent expenditures in the form of mailers and digital advertising supporting the same 12 candidates named in the August 8, 2018 press release and news article.[7] The communications were disseminated on September 17 and 19, 2018.[8] The report included a note stating, "Please note that the independent expenditures disclosed on this report were paid for from general treasury funds and no contributions were made for the purpose of furthering *these* expenditures."[9]

9. On October 12, 2018, Heritage Action filed its quarterly report disclosing the same $374,177 in independent expenditures supporting those 12 candidates, $233,585 of which were

---

[5] *Id.*
[6] *Id.*
[7] Heritage Action for America, Report of Independent Expenditures, FEC Form 5, at 1, 3-22 (filed Sept. 19, 2018), http://docquery.fec.gov/pdf/481/201809199122005481/201809199122005481.pdf.
[8] *Id.* at 3-22.
[9] *Id.* at 2 (emphasis added).

3

reported as disseminated on September 17, 2018, and $140,592 of which were reported as disseminated on September 19, 2018.[10] This report included a note stating, "Please note that the independent expenditures disclosed on this report were paid for from general treasury funds and, to the best of my knowledge, information, and belief at the time of filing, no reportable contributions were made for the purpose of furthering *these* expenditures."[11]

## SUMMARY OF THE LAW

10. Independent expenditures are expenditures that expressly advocate the election or defeat of a clearly identified federal candidate and are not coordinated with a candidate or political party. 52 U.S.C. § 30101(17); 11 C.F.R. § 100.16(a). "Contribution" is defined as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i).

11. FECA requires that a person other than a political committee that makes independent expenditures in excess of $250 in a calendar year must file a report with the Commission disclosing, among other things, the identification of each "person (other than a political committee) who makes a contribution to the reporting committee during the reporting period" in excess of $200 within the calendar year, 52 U.S.C. § 30104(c)(1) (cross-referencing 52 U.S.C. § 30104(b)(3)(A)) and "the identification of each person who made a contribution in excess of $200 to the person filing such statement which was made for the purpose of furthering an independent expenditure." 52 U.S.C. § 30104(c)(2)(C).

12. Previously, Commission regulations interpreted these statutory provisions to only require disclosure of each person who made a contribution in excess of $200, "which contribution

---

[10] Heritage Action for America, October 15 Quarterly Report of Independent Expenditures, FEC Form 5, at 1, 3-22 (filed Oct. 12, 2018), http://docquery.fec.gov/pdf/121/201810129124534121/201810129124534121.pdf.
[11] *Id.* at 2 (emphasis added).

4

was made for the purpose of furthering the reported independent expenditure." 11 C.F.R. § 109.10(e)(1)(vi). On August 3, 2018, the U.S. District Court for the District of Columbia held that the regulation was invalid and contrary to the statute it purported to implement. *Citizens for Responsibility and Ethics in Washington v. FEC*, 316 F. Supp. 3d 349, 423 (D.D.C. 2018). The court found that the Commission's regulation "impermissibly narrow[ed] the mandated disclosure in 52 U.S.C. § 30104(c)(2)(C), which requires the identification of such donors contributing for the purpose of furthering the not-political committee's own express advocacy for or against the election of a federal candidate, even when the donor has not expressly directed that the funds be used in the precise manner reported." *Id.* at 423. The court found that FECA's "[u]se of the indefinite article 'an' before 'independent expenditure' indicates a broader coverage than a particular, specified independent expenditure and instead means that disclosure must be made as to each non-trivial donor contributing to fund 'an independent expenditure' to a candidate, without regard to the actual reported form of the express advocacy funded by the expenditure." *Id.* at 390-91.

13. The court further held that the regulation "blatantly undercut[ ] the congressional goal of fully disclosing the sources of money flowing into federal political campaigns, and thereby suppresse[d] the benefits intended to accrue from disclosure, including informing the electorate, deterring corruption, and enforcing bans on foreign contributions being used to buy access and influence to American political officials." *Id.* at 423.

14. The D.C. District Court stayed its order vacating 11 C.F.R. § 109.10(e)(1)(vi) for 45 days. *Id.* at 415, 423. On September 15, 2018, the Chief Justice of the United States stayed the district court's order, *Crossroads GPS v. CREW*, No. 18A274, 2018 WL 4389245 (U.S. Sept. 15, 2018), and on September 18, 2018, the U.S. Supreme Court lifted the Chief Justice's stay,

*Crossroads GPS v. CREW*, No. 18A274, 2018 WL 4441781 (U.S. Sept. 18, 2018). The vacatur of the regulation took effect on September 18, 2018.[12]

15. On October 4, 2018, the Commission issued a press release offering "guidance to the public on how to proceed consistent with the district court's decision."[13] The guidance stated that "the Commission will enforce the statute for independent expenditures made on or after Sept. 18, 2018," and that "[i]n the interests of fairness, since no one was on notice until the district court's decision was handed down on Aug. 3, the Commission will exercise its prosecutorial discretion for the quarterly reports due Oct. 15, 2018."[14] As a result, the Commission stated, "[p]ersons (other than political committees) that made independent expenditures on or after Sept. 18, 2018" exceeding $250 in an election must disclose on their October quarterly reports as follows:

> For contributions received between Aug. 4, 2018 (the date after the district court's opinion) and Sept. 30, 2018 (the end of the reporting period), the information required by 52 U.S.C. § 30104 (c)(1) and (c)(2)(C), which includes:
>
> - the identification of each person (other than a political committee) whose contribution or contributions to the reporting person had an aggregate amount or value in excess of $200 within calendar year 2018, together with the date and amount of any such contribution(s); and
> - the identification of each of these persons whose contribution(s) in excess of $200 to the reporting person was made for the purpose of furthering any independent expenditure.[15]

16. Citing the district court's decision, the guidance stated that the Commission will enforce the statute as follows: ""[S]ubsection (c)(1) applies to '*all* contributions received by such'

---

[12] *See* Press Release, FEC, U.S. Supreme Court vacates stay in CREW v. FEC (16-259) (Sept. 19, 2018), https://www.fec.gov/updates/us-supreme-court-vacates-stay-crew-v-fec-16-259/ ("As a result of the Supreme Court's action, the vacatur of the regulation at issue is in effect as of September 18, 2018.")

[13] Press Release, FEC, FEC provides guidance following U.S. District Court decision in CREW v. FEC, 316 F. Supp. 3d 349 (D.D.C. 2018) (Oct. 4, 2018), https://www.fec.gov/updates/fec-provides-guidance-following-us-district-court-decision-crew-v-fec-316-f-supp-3d-349-ddc-2018/.

[14] *Id.*

[15] *Id.*

6

reporting not-political committee . . . and . . . requires disclosure of donors of over $200 annually making contributions 'earmarked for political purposes,' . . . which contributions are 'intended to influence elections . . . .'"[16] Additionally, stated the guidance, "[S]ubsection (c)(2)(C) requires reporting not-political committees to identify those donors of over $200 who contribute 'for the purpose of furthering *an* independent expenditure,'" but because "[t]hese donors are a subset of those contributors required to be identified in subsection (c)(1)," the report need not repeat the date and amount of such contributions.[17]

## CAUSE OF ACTION

### I. HERITAGE ACTION UNLAWFULLY KEPT CONTRIBUTORS SECRET

17. There is reason to believe Heritage Action received contributions for political purposes and for the purpose of furthering an independent expenditure, but failed to report the identity of those contributors, as required under 52 U.S.C. § 30104(c).

18. On August 8, 2018, Heritage Action issued a press release declaring its intention "to spend $2.5 million and back 12 candidates this November," and identified those candidates and races by name.[18] That same day, Heritage Action Executive Director Tim Chapman told *McClatchy* that "[w]hat we're telling donors is, every dollar we raise over our budget we can effectively pour more into these races."[19] On October 12, 2018, Heritage Action filed its quarterly report disclosing a total of $374,177 in independent expenditures supporting the same 12 candidates named in the August 8, 2018 press release and news article; $233,585 of

---

[16] *Id.* (citing *CREW*, 316 F. Supp. 3d at 389 (internal citations omitted; brackets and emphasis in original)).
[17] *Id.* (brackets and emphasis in original)
[18] Press Release, Heritage Action for America, *supra* note 2.
[19] Glueck, *supra* note 4.

7

those independent expenditures were disseminated on September 17, 2018, and $140,592 of those independent expenditures were disseminated on September 19, 2018.[20]

19. FECA requires that a person other than a political committee that makes independent expenditures must file a report with the Commission disclosing, among other things, the identification of each "person (other than a political committee) who makes a contribution to the reporting committee during the reporting period" in excess of $200 within the calendar year, 52 U.S.C. § 30104(c)(1) (cross-referencing 52 U.S.C. § 30104(b)(3)(A)), and such contributors who gave "for the purpose of furthering an independent expenditure." 52 U.S.C. § 30104(c)(2)(C). A contributor's identity must be reported under this section "even when the donor has not expressly directed that the funds be used in the precise manner reported." *CREW*, 316 F. Supp. 3d at 423; *see supra* ¶ 12.

20. On October 4, 2018, the Commission issued guidance clarifying that, for the October quarterly report, "[p]ersons (other than political committees) that made independent expenditures on or after Sept. 18, 2018" must disclose all contributors over $200 who, between August 4 and September 30, 2018, gave contributions "earmarked for political purposes" which were "intended to influence elections," and additionally disclose which of those contributions were "made for the purpose of furthering any independent expenditure."[21]

21. Heritage Action's public statements and reports filed with the Commission provide reason to believe that contributors gave to Heritage Action for political purposes and to further the organization's independent expenditures. Heritage Action publicly announced a plan to specifically raise funds to "back 12 candidates this November,"[22] and its executive director

---

[20] Heritage Action for America, October 15 Quarterly Report of Independent Expenditures, *supra* note 10, at 1, 3-22.
[21] Press Release, FEC, *supra* note 13 (citing *CREW*, 316 F. Supp. 3d at 389 (internal citations omitted)).
[22] Press Release, Heritage Action for America, *supra* note 2.

8

stated that "we're telling donors" that "every dollar we raise over our budget" would be "pour[ed]" into those same 12 races.[23] This statement indicates that contributors were encouraged to give contributions that would exceed Heritage Action's "budget" explicitly to support the organization's electoral activities "back[ing] 12 candidates." And just weeks later, Heritage Action made six-figure independent expenditures supporting those same 12 candidates. This progression from solicitations for specific activities to spending that correlates exactly with the solicitations provides reason to believe Heritage Action received contributions for the purpose of furthering the spending, i.e., its independent expenditures.

22. Heritage Action is apparently relying on the Commission's vacated regulation at 11 C.F.R. § 109.10(e)(1)(vi) when it explains on Form 5 that "the independent expenditures disclosed on this report were paid for from general treasury funds and, to the best of my knowledge, information, and belief at the time of filing, no reportable contributions were made for the purpose of furthering *these* expenditures."[24] Yet the D.C. District Court's decision on August 3, 2018, made clear that 52 U.S.C. § 30104(c)(2)(C) requires disclosure of the identity of all contributors who gave over $200 for the purpose of furthering any of the organization's independent expenditures, "even when the donor has not expressly directed that the funds be used in the precise manner reported." *CREW*, 316 F. Supp. 3d at 423. The District Court stayed its order striking the Commission's unlawful regulation until September 17 (a stay later extended by the Chief Justice to September 18) "to provide time for the FEC to issue interim regulations that comport with the statutory disclosure requirement," *id.*, but as the Commission's guidance suggests, as of August 3 all entities financing independent

---

[23] Glueck, *supra* note 4.
[24] Heritage Action for America, October 15 Quarterly Report of Independent Expenditures, *supra* note 10, at 2 (emphasis added).

9

expenditures were on notice that any reports filed on or after September 18 would require disclosure of such contributors. Thus, when Heritage Action announced on August 8 its plan to "raise" funds to "back 12 candidates this November," it was on notice of its recordkeeping and disclosure obligations with regard to any independent expenditures to be reported after the stay expired. Moreover, following the Commission's October 4 guidance, Heritage Action was on notice that its quarterly report due October 15 (and filed October 12) was subject to the disclosure requirements of section 30104(c)(1) and (2)(C).

23. In sum, by failing to report the identity of any contributors on its October quarterly independent expenditure report, Heritage Action failed to comply with FECA's reporting obligations at 52 U.S.C. § 30104.

## PRAYER FOR RELIEF

24. Wherefore, the Commission should find reason to believe that Heritage Action for America violated 52 U.S.C. § 30101 *et seq.*, and conduct an immediate investigation under 52 U.S.C. § 30109(a)(2).

25. The Commission should seek appropriate sanctions for any and all violations, including civil penalties sufficient to deter future violations and an injunction prohibiting the respondents from any and all violations in the future, and should seek such additional remedies as are necessary and appropriate to ensure compliance with the FECA.

Respectfully submitted,

Campaign Legal Center, by
Brendan M. Fischer
1411 K Street, NW, Suite 1400
Washington, DC 20005

(202) 736-2200

*Margaret P.J. Christ* (signature)
Margaret Christ
1411 K Street NW, Suite 1400
Washington, DC 20005
(202) 736-2200

Brendan M. Fischer
Campaign Legal Center
1411 K Street, NW, Suite 1400
Washington, DC 20005
Counsel to the Campaign Legal Center,
Margaret Christ

October 16, 2018

## VERIFICATION

The complainants listed below hereby verify that the statements made in the attached Complaint are, upon their information and belief, true.

Sworn pursuant to 18 U.S.C. § 1001.

For Complainant Margaret Christ

Margaret Christ

Sworn to and subscribed before me this 16 day of October 2018.

Notary Public



For Complainant Campaign Legal Center

Brendan M. Fischer

Sworn to and subscribed before me this 16 day of October 2018.

Notary Public



12