**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAMPAIGN LEGAL CENTER,

     *Plaintiff*,

v.

FEDERAL ELECTION COMMISSION,

     *Defendant*,

HERITAGE ACTION FOR AMERICA,

     *Proposed Intervenor-Defendant*.

Case No. 1:21-cv-0406 (TJK)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THE EXPEDITED MOTION OF HERITAGE ACTION FOR AMERICA
TO INTERVENE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 5

I.    Heritage Action is entitled to intervene as of right .......................................... 7

    A.    Heritage Action has standing to challenge the Court's May 3 Order .......... 8

    B.    Heritage Action's motion to intervene is timely ...................................... 10

    C.    Heritage Action has legally protected interests in this case....................... 16

    D.    Heritage Action's interests would be impeded if it is not allowed to intervene ........ 16

    E.    The FEC cannot adequately represent Heritage Action's interests ........... 17

II.   Alternatively, the Court should grant Heritage Action discretionary intervention ............. 20

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acree v. Republic of Iraq,*
   370 F.3d 41 (D.C. Cir. 2004)........................................................................6, 11, 12, 15

*Allied Mech. Servs., Inc. v. NLRB,*
   668 F.3d 758 (D.C. Cir. 2012)........................................................................14

*Amarin Pharms. Ireland Ltd. v. FDA,*
   139 F. Supp. 3d 437 (D.D.C. 2015)........................................................................11

*Associated Builders & Contractors, Inc. v. Herman,*
   166 F.3d 1248 (D.C. Cir. 1999)........................................................................6, 11

*Aug v. Nat'l R.R. Passenger Corp.,*
   425 F. Supp. 946 (D.D.C. 1976)........................................................................1

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
   142 S. Ct. 1002 (2022)........................................................................5, 10, 11, 13

*Ceres Gulf v. Cooper,*
   957 F.2d 1199 (5th Cir. 1992)........................................................................12

*Citizens for Resp. & Ethics in Wash. v. FEC,*
   299 F. Supp. 3d 83 (D.D.C. 2018)........................................................................5

*CLC v. FEC,*
   334 F.R.D. 1 (D.D.C. 2019)........................................................................ *passim*

*Comcast Corp. v. FCC,*
   526 F.3d 763 (D.C. Cir. 2008)........................................................................14

*Comm. on Judiciary of U.S. House of Representatives v. Miers,*
   542 F.3d 909 (D.C. Cir. 2008)........................................................................14

*Crossroads Grassroots Pol'y Strategies v. FEC,*
   788 F.3d 312 (D.C. Cir. 2015)........................................................................ *passim*

*Democratic Cong. Campaign Comm. v. FEC,*
   831 F.2d 1131 (D.C. Cir. 1987)........................................................................17

*Dimond v. District of Columbia,*
   792 F.2d 179 (D.C. Cir. 1986)........................................................................18

*Duplan v. Harper,*
   188 F.3d 1195 (10th Cir. 1999)........................................................................12

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.,*
   407 F.3d 1091 (10th Cir. 2005)........................................................................12

*Forest Cnty. Potawatomi Cmty. v. United States,*
   317 F.R.D. 6 (D.D.C. 2016)........................................................................13, 16

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ..................................................................16, 17

*Jones v. Prince George's Cnty.*,
    348 F.3d 1014 (D.C. Cir. 2003) ......................................................................16

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008) ....................................................................7, 13

*Mansfield, Coldwater & Lake Mich. Ry. v. Swan*,
    111 U.S. 379 (1884) ..........................................................................................12

*NAACP v. New York*,
    413 U.S. 345 (1973) ..........................................................................................10

*Paisley v. CIA*,
    724 F.2d 201 (D.C. Cir. 1984) ....................................................................6, 11

*Republic of Iraq v. Beaty*,
    556 U.S. 848 (2009) ............................................................................................6

*Smoke v. Norton*,
    252 F.3d 468 (D.C. Cir. 2001) ..........................................................................5

*Swope v. DOJ*,
    No. 12-cv-1439, 2012 WL 12874490 (D.D.C. Dec. 13, 2012) ...........................14

*Tweedle v. State Farm Fire & Cas. Co.*,
    527 F.3d 664 (8th Cir. 2008) .....................................................................11, 15

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977) ...........................................................................5, 10, 11, 15

**STATUTES**

5 U.S.C. § 552 .......................................................................................................1, 13

52 U.S.C. § 30109 ......................................................................................................5

**OTHER AUTHORITIES**

11 C.F.R. § 4.4 .............................................................................................................1

Fed. R. Civ. P. 24 ..............................................................................................*passim*

Shane Goldmacher, *Democrats' Improbable New F.E.C. Strategy:*
    *More Deadlock Than Ever*, N.Y. Times (June 8, 2021) ....................................1, 18

## INTRODUCTION

Throughout the course of this litigation, Defendant Federal Election Commission ("FEC") has concealed from the Court, Plaintiff Campaign Legal Center ("CLC"), and proposed intervenor-defendant Heritage Action that the Commission has already voted on CLC's administrative complaint against Heritage Action—and apparently reached a deadlocked vote preventing the bipartisan, six-member FEC from taking enforcement action against Heritage Action, which should have terminated the matter.  This Court never had an opportunity to review the Commission's voting records in this case because some commissioners are willfully obstructing disclosure of the Commission's action on the administrative complaint by failing to authorize release of the file in the otherwise terminated proceeding.  *See* Shane Goldmacher, *Democrats' Improbable New F.E.C. Strategy: More Deadlock Than Ever*, N.Y. Times (June 8, 2021) ("Democrats are declining to formally close some cases after the Republicans vote against enforcement.  That leaves investigations officially sealed in secrecy and legal limbo.").

In the face of this gamesmanship, Heritage Action requested those voting records through the Freedom of Information Act ("FOIA"), because FOIA requires agencies to "make available for public inspection a record of the final votes of each member in every agency proceeding" and "final opinions."  5 U.S.C. § 552(a)(5), (a)(2)(A); *see* 11 C.F.R. § 4.4(a)(3) (requiring the FEC to make available for public inspection "[o]pinions of Commissioners rendered in enforcement cases"); *Aug v. Nat'l R.R. Passenger Corp.*, 425 F. Supp. 946, 950–51 (D.D.C. 1976) (rejecting claim that votes, and any explanations of those votes, are subject to FOIA Exemption 5).

In entering its order dated May 3, 2022, Dkt. No. 23 ("May 3 Order"), the Court did not have the benefit of either the FEC's appearance and defense of this case or the FEC voting records that show the Commission voted (*i.e.*, took action) on CLC's administrative complaint against Heritage Action, but the FEC recently confirmed that it is withholding voting records responsive

to Heritage Action's FOIA request.  *See* Exhibit 1, attached.  Just a few days ago, the FEC informed Heritage that it intends to produce redacted versions of its voting records.  *Id.*  Heritage Action has now administratively appealed the FEC's unlawful withholding, *see* Exhibit 2, attached, and intends to file a FOIA lawsuit seeking full disclosure of the FEC's FOIA records once it exhausts its administrative appeal.   Because the Commission had already taken action on CLC's administrative complaint, Heritage Action intends to argue that this lawsuit was moot at the time the Court issued the May 3 Order, Dkt. No. 23—and CLC should not have been authorized to file a direct lawsuit against Heritage Action, which is also now pending before another court in this District.  Under the Federal Election Campaign Act ("FECA"), CLC's remedy is to sue the FEC (again), not Heritage Action, to challenge the FEC's action on the administrative complaint.

Heritage Action now seeks to intervene for the purpose of seeking reconsideration of or appealing the Court's subject matter jurisdiction to issue the May 3 Order authorizing CLC's direct lawsuit against Heritage Action.   The Supreme Court and the D.C. Circuit have expressly authorized intervention for the purpose of appeal when a party chooses not to appeal—particularly where, as here, the intervenor intends to challenge the district court's subject matter jurisdiction to issue the order on appeal.  Heritage Action asked the FEC whether it will appeal, but the FEC has not provided any assurance that the agency will appeal—and it almost certainly will not, given the ongoing gamesmanship at the agency.

And the D.C. Circuit has similarly explained that post-judgment intervention is appropriate where the necessity of intervention arose after the judgment—for example, to bring to the court's attention newly discovered evidence that would support reconsideration or relief from a judgment. Heritage Action seeks to do so here, by alerting the Court to the previously concealed FEC voting

records, so that the Court may reconsider its orders.  Indeed, this Court's May 3 Order noted this potential course of action.  May 3 Order 1 n.1.

Heritage Action is moving to intervene promptly—one week after the Court entered the May 3 Order, five days after CLC filed its direct lawsuit against Heritage Action, four days after the FEC confirmed that it had located voting records related to the administrative complaint against Heritage Action, and the same day that the FEC failed to provide assurance that it would appeal the May 3 Order.  Moreover, Heritage Action's motion comes well within the 60-day deadline to file a notice of appeal, within the 28-day deadline to seek to alter or amend a judgment under Rule 59, and well within the year required for a motion under Rule 60(b).  CLC will not be prejudiced by Heritage Action's intervention for the purpose of seeking reconsideration or appeal because CLC has already received the relief it requested from this Court:  authorization to file its direct lawsuit against Heritage Action.  The only reason to deny intervention would be to block the D.C. Circuit from reviewing or this Court from reconsidering the Court's subject matter jurisdiction to issue the May 3 Order—a maneuver that the D.C. Circuit has criticized.  The Court should allow either court to fully assess this Court's subject matter jurisdiction to issue the May 3 Order with the benefit of the voting records that have been unavailable to this Court.

## BACKGROUND

This case arises from the Commission's alleged failure to act on an administrative complaint that CLC filed with the FEC in 2018.  Heritage Action, a social welfare organization tax exempt under section 501(c)(4) of the Internal Revenue Code, is the respondent to that administrative complaint.  The FEC designated the matter as Matter Under Review 7516 ("MUR 7516").  CLC filed this lawsuit against the FEC in February 2021 alleging that the FEC had failed to act on the administrative complaint in MUR 7516, Compl., Dkt. No. 1, and later asked the Court for authorization to file a lawsuit against Heritage Action alleging violations of FECA.

On March 25, 2022, the Court issued an order granting Plaintiff's motion for a default judgment that required the Commission "to act on [the] administrative complaint" in MUR 7516 within 30 days of the order.  Dkt. No. 16.  Thirty days passed without any notification of action from the FEC, which has failed to enter an appearance in this case.  CLC then filed a Motion for Order Declaring Defendant Has Failed to Conform with the Court's March 25 Order, asserting that the FEC has not "claimed that it has acted on [the] administrative complaint."  Pl's Mot. For Order Declaring Failure to Conform to Default J., Dkt. No. 21, at 1.

Since then, Heritage Action received confirmation just four days ago that the FEC did take action on the underlying administrative complaint.  Through FOIA, Heritage Action requested from the FEC "[a]ny vote certifications reflecting votes taken by the [FEC] on … MUR 7516" and "[a]ny Statements of Reasons or other Commissioner opinions concerning … MUR 7516." Heritage Action Amicus Br. 7, Dkt. No. 17-3; *see* Amicus Br. Ex. 1, Dkt. No. 17-4.  On May 6, 2022, the FEC responded to that request by expressly acknowledging the existence of documents responsive to the request—indicating that votes have been held on CLC's administrative complaint.  Ex. 1.  The FEC stated that it "we will be providing [Heritage Action] with three pages of responsive records that contain redactions under FOIA Exemption 5."  *Id.*  As of this date, however, the FEC still has not produced those records, but Heritage Action will notify the Court once the records are produced.  Nevertheless, the fact that voting records responsive to Heritage Action's FOIA request exist reflects that the Commission met and considered the administrative complaint and cast formal votes on the administrative complaint—and, in light of the fact that there has been no further enforcement, apparently failed to garner four votes to investigate the allegations in the complaint, resulting in a so-called "deadlock dismissal" of the complaint.

Heritage Action has already filed an administrative appeal because the FEC redacted the voting records without any lawful basis under FOIA.  Ex. 2.

In the meantime, on May 3, 2022, this Court granted Plaintiff's Motion, declining to wait "[g]iven the procedural posture of the case."  May 3 Order 1, n.1.  The Court also authorized CLC to "bring 'a civil action'" to enforce FECA against Heritage Action pursuant to 52 U.S.C. § 30109(a)(8)(C).  *Id*. at 2 (quoting *Citizens for Resp. & Ethics in Wash. v. FEC*, 299 F. Supp. 3d 83, 101 (D.D.C. 2018)).  In a footnote, the Court addressed Heritage Action's amicus brief, noting that Heritage Action had not "sought to intervene and move for reconsideration of the Court's decision to grant default judgment."  *Id*. at 2 n.1.  Two days later, Plaintiff filed suit against Heritage Action directly.  *See* Compl., *CLC v. Heritage Action for Am.*, No 22-cv-01248 (D.D.C. May 5, 2022)., Dkt. No. 1.

Heritage Action now seeks to intervene for the purpose of seeking reconsideration of or appealing the Court's subject matter jurisdiction to issue the May 3 Order.  If granted party status, Heritage Action intends to argue that the FEC's voting records will show that the Commission has acted on CLC's administrative complaint in compliance with the Court's March 25 Order, thereby rendering this case moot and precluding this Court's subject matter jurisdiction over this case and the direct lawsuit that CLC filed against Heritage Action.

## ARGUMENT

Heritage Action is entitled to intervene as a matter of right in this case for the purpose of seeking reconsideration of or appealing the Court's subject matter jurisdiction to issue the May 3 order.  Although post-judgment intervention is rare, the Supreme Court and D.C. Circuit expressly allow post-judgment intervention for the purpose of appeal.  *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977); *Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001).  Indeed, the D.C. Circuit has held

that post-judgment intervention for the purpose of appeal is appropriate where, as here, the proposed intervenor seeks to appeal the district court's subject matter jurisdiction to issue the order on appeal. *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009). Similarly, the D.C. Circuit has indicated post-judgment intervention is appropriate where "the necessity of intervention [arose only] after judgment had been entered," *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999), or "to bring to the court's attention newly-discovered evidence that could not have been previously brought before the court." *Paisley v. CIA*, 724 F.2d 201, 202 n.1 (D.C. Cir. 1984).

The D.C. Circuit and courts in this District have also allowed intervention in cases challenging the Commission's treatment of a plaintiff's administrative complaint against a proposed intervenor-defendant. In particular, this case is controlled by the D.C. Circuit's decision in *Crossroads Grassroots Policy Strategies v. FEC*, which reversed a district court decision denying intervention of a proposed intervenor against whom an administrative complaint had been dismissed by the FEC. 788 F.3d 312, 316 (D.C. Cir. 2015). This case is also analogous to Judge Boasberg's decision in *CLC v. FEC*, 334 F.R.D. 1 (D.D.C. 2019), which permitted intervention where this case's Plaintiff similarly sought to take advantage of the FEC's default. As in *Crossroads* and *CLC*, the proposed intervenor in this case, Heritage Action, meets all the criteria to intervene as of right because it has standing, its motion to intervene was timely filed after the Court issued the May 3 Order authorizing CLC's direct lawsuit against Heritage Action, its interests are directly at stake and would be impaired by its inability to seek reconsideration of or to appeal the May 3 Order, and the FEC cannot adequately represent Heritage Action's interests.

In the alternative, Heritage Action also meets the criteria for permissive intervention. Heritage Action respectfully requests that the Court exercise its discretion to allow Heritage Action to intervene for the purpose of seeking reconsideration of or appealing the Court's subject matter jurisdiction to issue the May 3 Order authorizing CLC's direct lawsuit against Heritage Action. CLC will not be prejudiced by Heritage Action's intervention for the purpose of seeking reconsideration or appeal because proceedings have already concluded in this Court, and CLC has already filed its direct lawsuit against Heritage Action. Any slight prejudice to CLC from having to oppose reconsideration or defend against Heritage Action's appeal is insignificant compared to the likelihood that this Court authorized CLC to file a direct lawsuit against Heritage Action without subject matter jurisdiction and that its rulings will be entirely insulated from review without such intervention.

## I.      Heritage Action is entitled to intervene as of right.

Heritage Action has the right to intervene to defend its interests because the Court's May 3 Order authorized (and CLC has now filed) a direct lawsuit against Heritage Action alleging violations of FECA.  Under Federal Rule of Civil Procedure 24(a), "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  This means that a proposed intervenor must satisfy four requirements:  "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008).  Further, a proposed intervenor-defendant must

establish that it has Article III (though not prudential) standing. *Crossroads*, 788 F.3d at 316, 319–20. Because Heritage Action satisfies each of these requirements, there is "no problem with the intervenor[] replacing the FEC" at this stage. *CLC*, 334 F.R.D. at 7.

A. **Heritage Action has standing to challenge the Court's May 3 Order.**

A party seeking to intervene as a defendant must satisfy the same standing inquiry as would a plaintiff in any other case: "injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316. Addressing the proposed intervention of a defendant in a similar case challenging Commission action, the D.C. Circuit reasoned that the standing inquiry hinged on the presence of injury in fact: if the party against whom plaintiff filed an underlying administrative complaint could prove injury, then it could also establish causation and redressability. *Id.* And in that case the proposed intervenor proved injury because if the plaintiff there prevailed in its action against the Commission, the proposed intervenor would be in "the position of a respondent subject to enforcement proceedings." *Id.* at 317.

Heritage Action has a significant and direct interest in the FEC's failed vote to enforce based on CLC's administrative complaint because the FEC's refusal to enforce may shield Heritage Action from administrative enforcement and liability under FECA. Indeed, the fact that responsive voting records exist means that the FEC has in fact acted on the complaint, and the lack of any enforcement action against Heritage Action indicates that there were not four Commissioner votes to pursue enforcement. The D.C. Circuit has "generally found a sufficient injury in fact where"—as here—"a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Id.* at 317–18; *see id.* at 319 (Proposed defendant-intervenor had "a concrete stake in the favorable agency action currently in place."). Here, the threatened loss of that favorable action constitutes a concrete and imminent injury

sufficient to establish standing. *Id.* at 319; *see CLC*, 334 F.R.D. at 4–5 (finding loss of beneficial decision that "would subject [intervenor] to the possibility of future liability" demonstrated injury in fact).

*Crossroads* is controlling here.  Here, as in *Crossroads*, the Commission was not administratively prosecuting a proposed intervenor-defendant for alleged violations of FECA.  In both cases, a lawsuit sought to force such a prosecution.  And, as in *Crossroads*, here the Plaintiff seeks "potential direct regulation of" Heritage Action under FECA.  788 F.3d at 318.  Accordingly, just like the intervenor in *Crossroads*, Heritage Action "has a significant and direct interest in the favorable action [lack of administrative prosecution for an alleged violation of FECA] shielding it from further litigation and liability."  *Id.*  The "'threatened loss' of that favorable action constitutes a 'concrete and imminent injury.'"  *Id.*

Heritage Action's injury is even clearer here because CLC has already filed a direct lawsuit against Heritage Action pursuant to this Court's May 3 Order.  Being "exposed to civil liability via private lawsuit . . . would be a significant injury in fact."  *Id.*  Until the Court issued the May 3 Order, Heritage Action "face[d] no exposure to" civil liability because the FEC had declined to investigate the administrative complaint.  *Id.* at 316.  But the Court's May 3 Order allows CLC to "pursu[e] the same grievance against" Heritage Action in a direct lawsuit.  *Id*. at 317.  "[S]hould [CLC's] suit succeed" against Heritage Action, *id*. at 316, Heritage Action would have to disclose certain of its donors, whose privacy is of the utmost importance to Heritage Action.  If the Court's May 3 Order authorizing a direct lawsuit against Heritage Action is reconsidered by this Court or reversed on appeal, however, that ruling would provide Heritage Action "with a significant benefit" because it may "preclude[] exposure to civil liability."  *Id*. at 317.  Accordingly, because

Heritage Action faces concrete and significant injury from CLC's lawsuit and the Court's May 3 Order, it has standing to intervene here.

### B.      Heritage Action's motion to intervene is timely.

"[T]imeliness is to be determined from all the circumstances," and "the point to which [a] suit has progressed is . . . not solely dispositive." *Cameron*, 142 S. Ct. at 1012 (quoting *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)).  "Here, the most important circumstance relating to timeliness is that [Heritage Action] sought to intervene 'as soon as it became clear'" that the Commission would not appeal the Court's May 3 order authorizing CLC to file a direct lawsuit against Heritage Action.  *Id.* (quoting *McDonald*, 432 U.S. at 394).  In *Cameron*, the Supreme Court recently permitted intervention where a non-party intervened two days after learning that a government official would not appeal an adverse decision, within a week after that adverse decision, and within the time limit for seeking appellate review.  *Id.*

*Cameron*'s "logic applies here":  Heritage Action's motion is timely "because it was filed soon after the movant learned that the [Commission] would not appeal." *Id.*  Heritage Action seeks to intervene the same day that the Commission failed to provide assurance that it would appeal, one week after this Court's May 3 Order, five days after CLC filed its direct lawsuit against Heritage Action, four days after the FEC confirmed it had located voting records related to the administrative complaint against Heritage Action, and the same day that the FEC failed to provide assurance that it would appeal the May 3 Order.  Moreover, Heritage Action's Motion comes well within the 60-day deadline to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(B), within the 28-day deadline to seek to alter or amend a judgment under Rule 59, and well within the year required for a motion under Rule 60(b).

Heritage Action's "need to seek intervention did not arise" until the Court's May 3 Order authorizing CLC's direct lawsuit against Heritage Action—which CLC promptly filed—and the Commission's failure to provide assurance that it would appeal. *Id.* Heritage Action could not have intervened for the purpose of appeal until the Court issued a final appealable order—*i.e.*, until the May 3 order authorizing CLC to sue Heritage Action. "[T]he timeliness of [this] motion should be assessed in relation to that point in time." *Id.* And "[a]lthough the litigation [has] proceeded for [months], that factor is not dispositive." *Id.* (authorizing intervention even after litigation had proceeded "for years" before intervention was sought).

Moreover, Heritage Action had no basis to intervene until after May 6, 2022, when the FEC confirmed the existence of its voting records in response to Heritage Action's FOIA requestion. Ex. 1. Heritage Action's motion to intervene is timely because it seeks "to bring to the court's attention newly-discovered evidence that could not have been previously brought before the court." *Paisley*, 724 F.2d at 202 n.1; *see also Herman*, 166 F.3d at 1257 ("necessity of intervention [arose only] after judgment had been entered").

*Cameron* reaffirms the approach following *McDonald* whereby "courts often grant post-judgment motions to intervene where no existing party chooses to appeal the judgment of the trial court." *Acree*, 370 F.3d at 50; *see Cameron*, 142 S. Ct. at 1012; *CLC*, 334 F.R.D. at 4 (finding intervention timely where it came one month after the FEC publicized a decision not to defend suit). *Accord Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (8th Cir. 2008) ("[N]othing in Rule 24(a) precludes postjudgment or even post-appeal intervention."). "That is precisely what [Heritage Action] has done here." *Amarin Pharms. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 444 (D.D.C. 2015) (finding intervention timely when no party chose to appeal trial court's judgment).

Additionally, the "purpose for which intervention is sought" weighs heavily in favor of granting intervention here. *Acree*, 370 F.3d at 49. Subject matter jurisdiction is "the first and fundamental question" that a Court must decide in every case, *Mansfield, Coldwater & Lake Mich. Ry. v. Swan*, 111 U.S. 379, 382 (1884), and a district court has an "independent obligation to assure itself of its own jurisdiction," *Acree*, 370 F.3d at 50. In *Acree*, the D.C. Circuit reversed a district court's denial of "a motion to intervene for the purpose of contesting the District Court's subject matter jurisdiction" as untimely, noting that "the District Court failed to weigh … the purposes for which the Government sought to intervene" because it was not "simply seeking to weigh in on the merits" but its "sole purpose in intervening was to raise a highly tenable challenge to the District Court's subject matter jurisdiction … and to preserve that issue for appellate review." *Id*. at 43, 50. *Accord Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1104 (10th Cir. 2005) (allowing intervention by party to address the "essential" issue of subject-matter jurisdiction) (citing *Duplan v. Harper*, 188 F.3d 1195, 1203 (10th Cir. 1999)); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992) (finding "the existence of a substantial question about the district court's jurisdiction" to be a "special factor that supports finding timeliness" for intervention).

Likewise here, Heritage Action's purpose for intervening is to seek reconsideration of or appeal the Court's May 3 order for lack of subject matter jurisdiction in light of FEC voting records showing that the Commission has acted on the administrative complaint. "The only result achieved by denial of the motion to intervene in this case" would be "the effective insulation of the District Court's exercise of jurisdiction from all appellate review." *Acree*, 370 F.3d at 50 (finding denial of intervention was an abuse of discretion in light of insulation concern). It is hard to imagine a more important purpose for intervening than to ensure that a district court had subject matter

jurisdiction to issue the underlying order, particularly in this case where the Court's May 3 Order authorized a direct lawsuit against Heritage Action, which CLC has now filed.

Moreover, the other factors courts consider to determine timeliness support the same conclusion:  Heritage Action's motion is timely.  *See Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 10 (D.D.C. 2016) (considering "(a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights" (citing *Karsner*, 532 F.3d at 886)).

As explained by the Supreme Court, the time-since-inception factor is "not dispositive." *Cameron*, 142 S. Ct. at 1012.  That is especially true here because the FEC never announced—and has unlawfully concealed—its voting records on the administrative complaint against Heritage Action, which was made in a closed-door executive session.  *See* 5 U.S.C. § 552(a)(5), (a)(2)(A) (requiring the FEC to "make available for public inspection a record of the final votes of each member in every agency proceeding" and "final opinions").  It took a FOIA request for Heritage Action to learn that the FEC had taken agency action, holding votes on the administrative complaint that likely resulted in a split vote declining to take enforcement action against Heritage Action.  Ex. 1.  While the FEC never appeared in this case, it could have done so at any point, and there was no way for Heritage Action to predict what the agency would do in light of certain commissioners' gamesmanship—especially after an Article III Court granted a motion for default judgment in March 2022 and *ordered* the FEC to take action on the administrative complaint.  Dkt. No. 16, at 2 (ordering the FEC to "conform to this Court's Order within 30 days by acting on CLC's administrative complaint").  Indeed, Heritage Action could not have predicted that a federal agency—whose officers generally "are accorded a good-faith presumption that they are following

the law"—would choose to flout the Court's March 25 Order and continue to conceal its voting records without any lawful basis. *Swope v. DOJ*, No. 12-cv-1439, 2012 WL 12874490, at *1 (D.D.C. Dec. 13, 2012); *see also Allied Mech. Servs., Inc. v. NLRB*, 668 F.3d 758, 770–71 (D.C. Cir. 2012) (citing cases addressing the long-settled "presumption of administrative regularity"); *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (noting that courts "have long presumed that officials of the Executive Branch will adhere to the law as declared by the court"); *Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) ("We must presume an agency acts in good faith[.]").

Since learning of the agency's default, Heritage Action promptly informed the Court through its amicus brief that the Commission may well have voted on the administrative complaint and sought through FOIA voting records showing that action. At any point prior to the entry of the Court's May 3 Order, the FEC could have entered an appearance and informed the Court of its action on the administrative complaint—and disclosed the outcome of that vote (likely a deadlocked 3-3 vote). For example, even after the Court issued the March 25 Order granting Plaintiff's motion for a default judgment and ordering the FEC to act within 30 days, the FEC still could have disclosed its vote before the Court granted CLC's motion for an order that the FEC had failed to conform to the March 25 Order—and, indeed, one would reasonably expect the FEC to do so in the face of a mandatory court order. That disclosure would have complied with the Court's March 25 Order and mooted this lawsuit. Once the Court entered the May 3 Order, Heritage Action promptly asked the FEC if it would appeal—and without receiving any assurance of an appeal from the FEC, Heritage Action moved to intervene later the same day. *See* Exhibit 3, attached.

No party would be "unfairly prejudiced" by Heritage Action's intervention for the purpose of seeking reconsideration of or appealing the Court's order. *McDonald*, 432 U.S. at 394; *Acree*, 370 F.3d at 50 (permitting post-judgment motions to intervene "where intervention would not unduly prejudice the existing parties"). Certainly the FEC would not be prejudiced by Heritage Action vindicating its decision not to take enforcement action against Heritage Action based on CLC's administrative complaint. As for CLC, it should not benefit from an order that this Court lacked jurisdiction to enter. If the FEC has acted on CLC's administrative complaint, then CLC's proper remedy is against the FEC, not Heritage Action. In this case, Heritage Action simply seeks to stand in the shoes of the FEC in pursuit of reconsideration or on appeal. Heritage Action does not seek to conduct discovery or otherwise unnecessarily delay the proceedings in this Court, which have already concluded.[2] And CLC has already received the benefit of the Court's May 3 Order because it has already filed its direct lawsuit against Heritage Action. *CLC*, No 22-cv-01248 (D.D.C. May 5, 2022). To the extent CLC complains about the additional costs of having to defend Heritage Action's motion seeking reconsideration or appeal, "the litigation expenses rationale already has been rejected in this Circuit." *Crossroads*, 788 F.3d at 317. And, at bottom, any slight prejudice to CLC from having to oppose reconsideration or defend against Heritage Action's appeal is insignificant compared to the likelihood that this Court authorized CLC to file a direct lawsuit against Heritage Action without subject matter jurisdiction and the prejudice of effectively insulating those orders from any review whatsoever. *See Tweedle*, 527 F.3d at 671 (approving of district court's comparative weighing of prejudice to proposed intervenor and other parties).

---

[2] If the D.C. Circuit remands this case, Heritage Action reserves the right to participate as a party in any further proceedings in this Court.

Finally, the need for intervention to preserve Heritage Action's rights is without question now that it is apparent that the Commission will not appeal the May 3 Order and CLC has already filed direct suit against Heritage Action.  *See CLC*, 334 F.R.D. at 4–5.  Nothing more is required for Heritage Action to timely assert its right to intervene here.

### C.    Heritage Action has legally protected interests in this case.

For the same reasons Heritage Action has standing, it also has legally protected interests in this litigation for purposes of intervention under Rule 24(a).  The D.C. Circuit has consistently held that a finding of constitutional standing for a proposed intervenor-defendant alone establishes that the proposed intervenor has "an interest relating to the property or transaction that is the subject of the action."  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)(2)); *accord Crossroads*, 788 F.3d at 320; *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003).  CLC's direct lawsuit confirms that Heritage Action has an interest in seeking reconsideration of or appealing the Court's May 3 Order authorizing CLC to file that lawsuit.

### D.    Heritage Action's interests would be impeded if it is not allowed to intervene.

If Heritage Action is not allowed to intervene, its ability to protect the concrete and substantial interests identified above would be seriously impeded.  Under the impediment inquiry, courts ask "as a practical matter" what are the "practical consequences" of denying intervention that may impair the putative intervenor's interest.  *See* Fed. R. Civ. P. 24(a)(2); *Forest Cnty. Potawatomi Cmty*, 317 F.R.D. at 10–11 (quoting *Fund for Animals, Inc.*, 322 F.3d at 735).

Now that CLC has obtained a declaration that the Commission's alleged inaction was contrary to law and authorization to file a separate action, that relief makes Heritage Action's task of reestablishing the status quo—non-prosecution for alleged violations of the FECA—more

difficult and burdensome to achieve.  That fact alone satisfies this factor under Rule 24(a).  *Fund for Animals, Inc.*, 322 F.3d at 735 ("there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds in this case will be difficult and burdensome."); *see CLC*, 334 F.R.D. at 4–5.

Moreover, Heritage Action's interests will be impaired if it is unable to seek reconsideration of or appeal the Court's May 3 Order authorizing CLC's direct lawsuit against Heritage Action.  If Heritage Action is not allowed to intervene, the May 3 Order will not be reconsidered or appealed.  CLC's direct lawsuit against Heritage Action will proceed after the Court issued an order without subject matter jurisdiction on the incorrect premise that the FEC never acted on the administrative complaint.  Heritage Action's interests would be seriously impaired if another court issues an adverse judgment in CLC's direct lawsuit requiring Heritage Action to disclose its donors, and they are already impaired by having to defend that direct lawsuit.  Heritage Action will never have a better opportunity than now to protect the substantial benefits afforded by the status quo—the legal protection afforded by the Commission's failure to obtain four affirmative votes to take enforcement action against Heritage Action, the resulting lack of lawful authorization for a separate civil action against Heritage Action, and the functional equivalent of dismissal of the administrative complaint, the rationale for which is owed "large deference" by the courts.  *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1134 (D.C. Cir. 1987) (Ginsburg, J.). Because the May 3 Order impedes Heritage Action's ability to protect its interests, this Court should grant leave to intervene as a matter of right.

**E.     The FEC cannot adequately represent Heritage Action's interests.**

There is no question that the FEC cannot adequately represent Heritage Action's interests, either for purposes of seeking reconsideration or on appeal.  The D.C. Circuit characterized the

requirement that no party to the action be an adequate representative of the movant's interests as "not onerous," and reasoned "a movant 'ordinarily should be allowed to intervene unless it is clear that the [original] party will provide adequate representation.'"  *Crossroads*, 788 F.3d at 321; *see CLC*, 334 F.R.D. at 6 ("[T]here can be no question that a defaulting defendant will not adequately represent [intervenor's] interests.").  *Accord Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (proposed intervenor "need only show that representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate.").  Commission representation is inadequate for at least three reasons:  (1) the FEC has been unlawfully concealing its voting records from the Plaintiff, the Court, and Heritage Action in a ruse to prompt a court to enforce FECA against Heritage Action; (2) the Commission is not likely seek reconsideration of or appeal the May 3 Order; and (3) the Commission is a regulatory agency in a position to regulate and sanction Heritage Action—a dynamic that precludes a finding of adequate representation under Rule 24(a).

To begin, the FEC has been unlawfully concealing its votes on CLC's administrative complaint against Heritage Action to frustrate Heritage Action's ability to defend its interests. Heritage Action is actively seeking those voting records through the administrative FOIA process and, if necessary, will pursue litigation to ensure they are fully released as required by law.  When the FEC eventually reveals those unredacted voting records, they will likely show that the Commission deadlocked—*i.e.*, that four Commissioners did not vote to initiate an enforcement action against Heritage Action.  Such action on CLC's administrative complaint would mean that this lawsuit is moot.  But some commissioners have chosen to conceal those records and prevent the agency from defending itself so that CLC can proceed directly against Heritage Action and seek to enforce FECA even though a majority of Commissioners did not choose to enforce.  *See* Goldmacher, *Democrats' Improbable New F.E.C. Strategy*, *supra*.  Under these circumstances,

the FEC is not representing Heritage Action's interests—it is actively opposed to Heritage Action's interests.

Moreover, the FEC is unlikely seek reconsideration of or appeal the Court's May 3 Order unless the composition of the Commission changes and another vote is held. Because the FEC is currently the only party with standing to appeal the Court's May 3 Order, but is unlikely to do so, Heritage Action is the only other interested party with standing to appeal. Likewise for any motion to seek reconsideration of the May 3 Order in this Court. The FEC, of course, cannot adequately represent Heritage Action in either instance if the Commission continues not to appear or defend this lawsuit in any way. Allowing Heritage Action to intervene enables it to defend its own interests and ensures a full and adversarial presentation of the jurisdictional issues before the D.C. Circuit by parties with a real stake in this litigation. Indeed, Judge Boasberg permitted intervention in similar circumstances in a case involving the same Plaintiff and the Defendant. *CLC*, 334 F.R.D. at 6 (discussing the effect of the Commission's default in action commenced by Plaintiff against the Commission and granting intervention). This Court should grant intervention as well.

Finally, the Commission is ill-suited to represent Heritage Action's interests because Heritage Action remains subject to FEC regulation. The D.C. Circuit has expressed skepticism of "government entities serving as adequate advocates for private parties," and, in particular, of the Commission serving as an adequate advocate for entities such as Heritage Action, which fall under the regulatory umbrella of the Commission. *Crossroads*, 788 F.3d at 321. That dynamic alone satisfies Heritage Action's burden to show that the Commission will not adequately represent its interests at this stage of this suit.

**II.      Alternatively, the Court should grant Heritage Action discretionary intervention.**

Under Rule 24(b), a district court has broad discretion to allow intervention if (1) the proposed intervenor's claim or defense "shares with the main action a common question of law or fact," and (2) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).  Heritage Action easily meets these criteria.

Heritage Action's proposed defenses, set forth in the corresponding proposed answer, include questions of law and fact in common with the claims set forth in CLC's complaint.  They include the fundamental question of this Court's May 3 Order:  has the FEC acted on the administrative complaint.  It has.   And for the reasons described above, Heritage Action's intervention will not unduly delay or prejudice the adjudication of the rights of the CLC or the FEC.  *See CLC*, 334 F.R.D. at 6 (alternatively granting permissive intervention for similar reasons).  In these circumstances, it would be an abuse of the Court's discretion to deny Heritage Action the ability to defend its interests on reconsideration or appeal when the FEC almost certainly will not.

## CONCLUSION

Heritage Action respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, allow intervention under Rule 24(b), for the purpose of seeking reconsideration of or appealing the Court's May 3 Order.


Respectfully submitted, on May 10, 2022.


/s/ *Brett A. Shumate*
Brett A. Shumate (D.C. Bar No. 974673)
E. Stewart Crosland (D.C. Bar No. 1005353)
JONES DAY
51 Louisiana Avenue, N.W.

Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Attorneys for Proposed Intervenor-Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and distribution to all registered participants of the CM/ECF System.  Attorneys for Plaintiff are registered users of the CM/ECF System of this Court.  Defendant was served a paper copy of this filing via regular United States mail at its address:

Federal Election Commission
1050 First Street NE
Washington, DC 20463

/s/ *Brett A. Shumate*
Brett A. Shumate