UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAMPAIGN LEGAL CENTER,

*Plaintiff*,

v.

FEDERAL ELECTION COMMISSION,

*Defendant*.

Civil Action No. 21-406 (TJK)

## MEMORANDUM

In October 2018, Campaign Legal Center, known as CLC, filed an administrative complaint with the Federal Election Commission alleging that Heritage Action for America violated the Federal Election Campaign Act. More than two years passed with no evidence that the Commission had acted on CLC's complaint. So in February 2021, CLC sued the Commission for its failure to act. But the Commission never answered CLC's complaint or otherwise appeared. Thus, in May 2021, the Clerk of Court entered default. And later that month, CLC moved for default judgment, arguing that the Commission's failure to act on its complaint was contrary to law under 52 U.S.C. § 30109(a)(8), and explaining that, if the Court ordered the Commission to act and the Commission failed to do so within 30 days, it could then file suit directly against Heritage Action.

Ten months passed. By March 2022, the Commission still had not appeared. Nor was there any evidence that the Commission had acted on CLC's administrative complaint. The Court therefore granted CLC's motion for default judgment, found that the Commission's failure to act was contrary to law, and ordered the Commission to act on CLC's complaint within 30 days.

In April 2022, at the end of that 30-day window, Heritage Action appeared, seeking leave to file an amicus brief outlining its pending Freedom of Information Act request for Commission

voting records relating to CLC's complaint.  The next day, CLC informed the Court that there was no sign that the Commission conformed with the Court's order to act on its administrative complaint.  CLC thus moved the Court for an order finding that the Commission failed to conform and that it could sue Heritage Action directly.  The Court first granted Heritage Action leave to file its amicus brief but stressed that, because Heritage Action was not a party, any attempt to seek affirmative relief would be improper.  Six days later, with no other word from Heritage Action, the Court granted CLC's motion and found that (1) the Commission failed to conform and (2) CLC could sue Heritage Action directly.  The Court then instructed the Clerk of Court to close the case.

On May 10, 2022—one week after the Court's order and five days after CLC sued Heritage Action directly—Heritage Action moved to intervene.  It says that its FOIA request yielded voting records confirming that the Commission deadlocked on whether to investigate CLC's administrative complaint, which, in its view, means that the Commission *did* act on the complaint, making the case moot, despite the Court's conclusion that the Commission failed to conform with its order "to act."  Thus, Heritage Action argues that it should be permitted to intervene to move for reconsideration of or appeal the Court's order authorizing CLC's direct lawsuit against it, because the Court had no subject-matter jurisdiction to issue that order.

What a procedural mess.  Regrettably, because Heritage Action's motion is not timely, the Court will deny it.[1]

---

[1] Heritage Action asked the Court to issue an "indicative ruling" under Federal Rule of Civil Procedure 62.1 because it already noticed its appeal of the Court's order.  But an indicative ruling is unnecessary here—even with the pending appeal—since the Court is *denying* the motion to intervene.  That is because, in this Circuit, "while a district court does not have jurisdiction to grant relief while a case is pending on appeal, a district court may consider a motion for such relief and *deny* such relief without a remand from the appellate court." *Humane Soc'y of U.S. v. Johanns*, No. 06-cv-265 (CKK), 2007 WL 1810103, at *3 (D.D.C. June 21, 2007); *see also* Fed. R. Civ. P. 62.1(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . deny the motion[.]").

\*   \*   \*

Federal Rule of Civil Procedure 24 sets out several paths by which a nonparty may intervene in an action. A nonparty may intervene as of right under Rule 24(a)(2) if it satisfies "four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). And Rule 24(b) gives the Court discretion to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Like intervention as a matter of right, permissive intervention requires a timely motion." *Liu v. Mayorkas*, No. 21-cv-1725 (TNM), 2022 WL 203432, at \*1 (D.D.C. Jan. 24, 2022).

Timeliness "is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (citations omitted). "A motion for 'intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken.'" *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

Unfortunately, the Court sees no reason to depart from what usually happens when a party moves to intervene after passing on a "clear opportunity for pre-judgment intervention." *Associated Builders*, 166 F.3d at 1257. To begin with, Heritage Action did not move to intervene until more than a year after CLC filed suit, almost a year after CLC moved for default judgment, and

3

more than a month after the Court entered default judgment. It argues that it moved soon after it learned that the Commission "would not appeal" this Court's order finding that CLC could file its own suit, ECF No. 24-1 at 14, and as soon as the Commission "confirmed the existence of its voting records in response to Heritage Action's FOIA request," ECF No. 31 at 14. But whether the Commission would appeal that order does not really matter here. The "most important circumstance relating to timeliness is" whether Heritage Action "sought to intervene 'as soon as it became clear' that [its] interests 'would no longer be protected' by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022). And both the Clerk's entry of default and CLC's motion for default judgment made clear by May 2021—long before an appeal was even an option—that no party would be protecting Heritage Action's interests. *See Campaign Legal Ctr. v. FEC*, 334 F.R.D. 1, 6 (D.D.C. 2019). At the very least, the vulnerability of Heritage Action's interests would have been clear in March 2022, when the Court found that the Commission's failure to act was contrary to law and entered default judgment. Indeed, the voting records Heritage Action is trying to bring to bear concern *that* decision most directly. In the end, Heritage Action did not move to intervene until about a month and a half later, after the case had closed. True, Heritage Action did not have the Commission's response to its FOIA request until then, but that is because it did not file a FOIA request until *after* the Court granted default judgment. *See* ECF No. 24-3. And true, the Commission's unusual failure to appear and defend itself in this Court is partially responsible for how the case wound up in this posture, but that does not mean Heritage Action did not have many opportunities to intervene long before now.

Heritage Action's "purpose" for intervening does not help it either. When considering purpose, courts ask whether it "aligns with [the] timing." *Ctr. for Biological Diversity v. Raimondo*, No. 18-cv-112 (JEB), 2021 WL 2823102, at *3 (D.D.C. July 7, 2021). Courts are much

4

more likely to find intervention timely when the purpose of doing so is more "limited" or forward looking. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980) ("*AT&T*"). For example, in *AT&T*, the Circuit explained that if the proposed intervenor "sought to intervene for the purpose of presenting evidence or argument . . . , such intervention would be untimely." *Id.* But because it sought to intervene for the "limited purpose of taking an appeal," that weighed in favor of finding intervention timely. *Id.*; *see also Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977) (stressing that "the applicant did not seek to reopen the settled issues in the case but sought to participate in an upcoming, remedial phase of the litigation"). Heritage Action argues that it seeks to either move for reconsideration of or appeal this Court's order finding that CLC could file its own suit for lack of subject-matter jurisdiction. But it made clear at a status conference that reconsideration is its preferred aim. *See* May 25, 2022 Tr. at 3. And that is not a "limited purpose," *AT&T*, 642 F.2d at 1294; it is an attempt "to reopen the settled issues in the case," *Costle*, 561 F.2d at 908. And the Circuit has rejected the idea, advanced by Heritage Action, that seeking to make a jurisdictional argument should be a sort of thumb on the scale for intervention. *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014).[2]

As for Heritage Action's rights, they are obviously implicated. *See Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). Because of this Court's orders, CLC could file—and now has filed—suit directly against it. But the need to intervene to protect those

---

[2] The Circuit has suggested that intervening "to bring to the court's attention newly-discovered evidence that could not have been previously brought before the court" is a sort of special circumstance that may be viewed differently. *Paisley v. CIA*, 724 F.2d 201, 202 n.1 (D.C. Cir. 1984). But there is no reason to believe that Heritage Action *could not* have brought the voting records it has now to the Court before it entered judgment. The records are dated April 23, 2021—which was before CLC even moved for default judgment. *See* ECF No. 32-1 at 5. Heritage Action received them only recently because it asked for them only recently. *See*, *supra*. And, as explained above, it could have moved to intervene long ago.

interests is less clear. Heritage Action can advance the same jurisdictional arguments in the suit against it that it wants to make here. In fact, the court in that case will have to consider them, because whether the Commission's failure to act was contrary to law and whether it conformed with this Court's order to act implicate that court's subject-matter jurisdiction. *See Campaign Legal Ctr. v. Iowa Values*, --- F. Supp. 3d ---- , 2021 WL 5416635, at *3 (D.D.C. Nov. 19, 2021). Moreover, this Court's findings on those points are not preclusive. *See id.* (allowing defendant to relitigate in the citizen suit whether the Commission had acted contrary to law and failed to conform with the Court's order); *see also Arizona v. California*, 530 U.S. 392, 414 (2000) (recognizing that issue preclusion does not attach to default judgments); *cf. Crossroads*, 788 F.3d at 320 (describing orders in the suit against the Commission as having only "persuasive weight" in the direct citizen suit that followed).[3]

Finally, "the delay in moving for intervention will prejudice" CLC. 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1916 (3d ed.). As explained, Heritage Action is looking to reopen this Court's finding that the Commission failed to conform to its order to act on CLC's complaint. Doing so would likely require factfinding and argument. *Cf. Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014) (finding that intervention "was highly unlikely to disadvantage the existing parties" since the proposed intervenor "both foreswore reopening discovery and stipulated that he would not seek to revisit issues that had already been decided"). And that would mean further delay on the adjudication of claims that have been pending since CLC first filed its administrative complaint in 2018 and are now the subject of the new lawsuit. *See*

---

[3] Heritage Action's ability to raise its arguments in some later litigation "is not in itself a sufficient reason to deny intervention." *Love v. Vilsack*, 304 F.R.D. 85, 91 (D.D.C. 2014), *aff'd*, No. 14-5185, 2014 WL 6725758 (D.C. Cir. Nov. 18, 2014) (citing *Costle*, 561 F.2d at 910). Still, the degree of harm it will suffer without intervention is relevant to this Court's "assessment of timeliness." *Id.* at 91–92.

*Love*, 304 F.R.D. at 91 (D.D.C. 2014) (finding prejudice to preexisting parties where intervention would "serve only to delay further the conclusion of th[e] long-running case"); *Raimondo*, 2021 WL 2823102, at *4 (similar).

Given all the above, the Court must find that Heritage Action's motion to intervene is not timely. But—the Court stresses—that conclusion says nothing about the validity of Heritage Action's arguments about whether the Commission acted on CLC's administrative complaint, whether any failure was contrary to law, or whether the Commission conformed with the Court's order to act. Nor does it condone the Commission's unseemly failure to appear and defend itself in this Court, or what Heritage Action casts as a scheme to hide its activity and leave regulated parties in legal limbo. Those issues will have to be addressed in other cases. *See Campaign Legal Ctr. v. Heritage Action for Am.*, No. 22-cv-01248 (CJN) (CLC's direct lawsuit); *see also Heritage Action v. FEC*, No. 22-cv-01422 (CJN) (Heritage Action's APA suit against the Commission).

\*   \*   \*

For all these reasons, the Court will deny Heritage Action's motion to intervene. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 6, 2022